USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/30/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
LUISA RAMIREZ,                                      :
                                                    :
                              Plaintiff,            :
                                                    :
                                                    :          19-CV-986 (VEC)
            -against-                               :
                                                    :          OPINION AND ORDER
MICHAEL CETTA INC., D/B/A SPARKS                    :
STEAK HOUSE LLC,                                    :
                                                    :
                              Defendant.            :
----------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Luisa Ramirez sued her employer, Michael Cetta Inc., doing business as Sparks

Steak House LLC ("Sparks"), for gender-based discrimination and hostile work environment

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and the New

York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.  See* Compl.,

Dkt. 1.  Plaintiff also brought claims for retaliation pursuant to Title VII and the NYCHRL and a

claim for sexual harassment pursuant to the NYCHRL.  *See id.*  Defendant has moved for

summary judgment on all claims, pursuant to Federal Rule of Civil Procedure 56.  *See* Notice of

Mot., Dkt. 26.  Defendant's motion is GRANTED as to all claims, and the case is dismissed with

prejudice.

## BACKGROUND[1]

Plaintiff has been employed as a server at Sparks, an upscale steakhouse, since December

2014.  Def.'s 56.1 Stmt. ¶¶ 1–2; Pl.'s 56.1 Resp. ¶¶ 1–2.  Plaintiff continues to work at Sparks as

---

[1]       All facts described herein are undisputed unless otherwise stated.  As discussed *infra* note 2, in certain
instances in which Plaintiff asserted a dispute on facts set forth in Defendant's Local Civil Rule 56.1 Statement of
Undisputed Facts, Plaintiff's purported objection was nonresponsive to Defendant's asserted fact, and therefore, the

a server, and her schedule, compensation, and job responsibilities have generally remained the same throughout her tenure at Sparks.  Def.'s 56.1 Stmt. ¶¶ 5, 9–11; Pl.'s 56.1 Resp. ¶¶ 5, 9–11. Sparks presently employs five different managers, including Mr. Sayed Mohran, who are collectively responsible for supervising the Sparks' waitstaff, including Plaintiff.  *See* Def.'s 56.1 Stmt. ¶¶ 21–23; Pl.'s 56.1 Resp. ¶¶ 21–23.  Plaintiff has been subject to only two disciplinary actions during her employment at Sparks, both of which were written warnings for failing to report for her assigned shift.  *See* Def.'s 56.1 Stmt. ¶ 7; Pl.'s 56.1 Resp. ¶ 7.  Throughout her five-plus years at Sparks, most Sparks' employees have been men, with Plaintiff being one of only a few female employees at any given point in time.  *See* Pl.'s Tr. at 96, 151; Edelstein Tr. at 11.

Sparks maintains lockers in which its employees may store personal items and clothing. *See* Def.'s 56.1 Stmt. ¶ 59; Pl.'s 56.1 Resp. ¶ 59.  When Plaintiff started working at Sparks in December 2014, Sparks did not maintain designated locker rooms; rather, all employee lockers were in a hallway in the basement.  *See* Def.'s 56.1 Stmt. ¶¶ 59–61; Pl.'s 56.1 Resp. ¶¶ 59–61. Sparks' Employee Handbook contains no policy requiring employees to change into work attire on the premises, and Sparks asserts that some Sparks employees arrive already in work attire. *See* Michael Cetta, Inc. Employee Handbook (Dkt. 27-6); Edelstein Tr. at 22–26.  For the first several years of Plaintiff's employment, Plaintiff changed in various private areas to avoid

---

Court deems those facts to be undisputed.  The Court will refer to the parties' submissions as follows:  Defendant's Memorandum of Law in support of its motion for summary judgment, Dkt. 29, as "Def.'s Mem. of Law"; Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts, Dkt. 28, as "Def.'s. 56.1 Stmt."; Plaintiff's Memorandum of Law in opposition to Defendant's motion, Dkt. 32, as "Pl.'s Mem. of Law"; Plaintiff's Statement of Contested Facts Pursuant to Local Civil Rule 56.1, Dkt. 34, as "Pl.'s 56.1 Resp."; Defendant's Reply Memorandum of Law in further support of its motion, Dkt. 35, as "Def.'s Reply Mem. of Law"; and Defendant's Local Rule 56.1 Response to Plaintiff's Counterstatement, Dkt. 37, as "Def.'s 56.1 Reply."  The Court will refer to Plaintiff's deposition, Dkt. 27-1, as "Pl.'s Tr."; to Miguel Flores' deposition, Dkt. 33-4, as "Flores Tr."; and to Susan Edelstein's deposition, Dkt. 27-4, as "Edelstein Tr."

changing in front of her male coworkers; Sparks, however, did not have a private room specifically for Plaintiff or other female employees. *See* Def.'s 56.1 Stmt. ¶¶ 62, 66; Pl.'s 56.1 Resp. ¶¶ 62, 66. According to Plaintiff, she first complained to Sparks' management in 2015 about the absence of a women's locker room. *See* Pl.'s 56.1 Resp. ¶ 63; Pl.'s Tr. at 141.

In October 2016, Sparks' waitstaff submitted an open letter to Sparks' owners, management, and Human Resources ("HR") regarding Mr. Mohran. *See* Def.'s 56.1 Stmt. ¶ 36; Pl.'s 56.1 Resp. ¶ 36; Oct. 28, 2016 Open Ltr. (Dkt. 33-5). At the time of this letter, Mr. Mohran worked as a Sparks' server. *See* Def.'s 56.1 Stmt. ¶¶ 23, 37; Pl.'s 56.1 Resp. ¶¶ 23, 37. In the letter, Sparks' waitstaff complained that Mr. Mohran would not perform certain manual tasks, refused to wait on tables with more than a certain number of guests, had not worked a private party in years, and was mishandling money from the waitstaff's collective tip pool. *See* Oct. 28, 2016 Open Ltr. at 1. The letter contained no mention of harassment, discrimination, or retaliation by Mr. Mohran or any other Sparks' employee or supervisor. *See* Def.'s 56.1 Stmt. ¶ 45; Pl.'s 56.1 Resp. ¶ 45. Thirty-eight members of Sparks' waitstaff, including Plaintiff, signed the letter. *See* Oct. 28, 2016 Open Ltr. at 2–3. No employee took credit for having drafted the letter, and there was nothing in the letter to indicate who drafted it. *See* Def.'s 56.1 Stmt. ¶¶ 38, 44; Pl.'s 56.1 Resp. ¶¶ 38, 44; Oct. 28, 2016 Open Ltr. at 1–3.

Plaintiff asserts that Mr. Mohran mistakenly believed that Plaintiff drafted the October 2016 letter and that he has since subjected her to constant harassment as a result. *See* Def.'s 56.1 Stmt. ¶¶ 39–42; Pl.'s 56.1 Resp. ¶ 39–42; Pl.'s Tr. at 95, 100. Specifically, Plaintiff alleges that in November 2016, while she was changing in a private room away from the lockers, Mr. Mohran spat in her shoe, which she had left outside of her locker. *See* Def.'s 56.1 Stmt. ¶¶ 72, 75–77; Pl.'s 56.1 Resp. ¶¶ 72, 75–77. Plaintiff complained to Sparks' owners, management, and

HR about the incident, but her only proof was a picture of what she claimed was a wet spot in her shoe, as she herself had not seen the alleged incident. *See* Def.'s 56.1 Stmt. ¶¶ 86, 90–93; Pl.'s 56.1 Resp. ¶¶ 86, 90–93. HR investigated Plaintiff's allegation, speaking with Plaintiff, Mr. Mohran, and others; Sparks was unable to corroborate Plaintiff's allegation and did not take any disciplinary action against Mr. Mohran. *See* Def.'s 56.1 Stmt. ¶¶ 92–97; Pl.'s 56.1 Resp. ¶¶ 92–97. Plaintiff claims that when she reported the spitting incident she also complained about the lack of a separate locker room for women. *See* Compl. ¶ 24; Pl.'s Tr. at 140.

Plaintiff contends that Mr. Mohran continued to harass her after November 2016, including after Sparks promoted him to manager in 2017. *See* Compl. ¶ 30. Specifically, Plaintiff alleges that Mr. Mohran physically tried to bump into Plaintiff, subjected her to verbal harassment by calling her a prostitute in a foreign language, cast "hostile stares" at her, and overworked her by assigning her more tables than other servers, a practice known as "overseating." *See* Def.'s 56.1 Stmt. ¶¶ 42, 134–135, 143; Pl.'s 56.1 Resp. ¶¶ 42, 134–135, 143; Compl. ¶¶ 30, 34, 36.

Plaintiff also alleges that, in addition to Mr. Mohran's mistreatment, several of her coworkers have harassed her during her time at Sparks. Plaintiff's complaints include that: a coworker employed as a chef offered Plaintiff better food if she would date his brother; this same coworker called her "a piece of shit" and a "nobody" during a dispute over the chef's cooking technique; a different coworker used profanity toward her and called her a "nobody" in a dispute arising from Plaintiff's request that the coworker do his job; another coworker called her a "slut" on a single occasion; and three coworkers called her a "bitch" on a single occasion. *See* Def.'s 56.1 Stmt. ¶¶ 106, 111–113, 117–124, 136–137; Pl.'s 56.1 Resp. ¶¶ 106, 111–113, 117–124, 136–137. Plaintiff's response to these incidents varied from filing a formal complaint with

Sparks, *see* Def.'s 56.1 Stmt. ¶¶ 72, 90–91, 121; Pl.'s 56.1 Resp. ¶¶ 72, 90–91, 121; to orally

reporting her displeasure about the incident, *see* Def.'s 56.1 Stmt. ¶¶ 106, 108, 135; Pl.'s 56.1

Resp. ¶¶ 106, 108, 135; to doing nothing, *see* Def.'s 56.1 Stmt. ¶ 138; Pl.'s 56.1 Resp. ¶ 138.

In August 2018, Plaintiff filed a complaint against Sparks with the U.S. Equal

Employment Opportunity Commission ("EEOC") alleging discrimination based on gender.

Def.'s 56.1 Stmt. ¶ 26; Pl.'s 56.1 Resp. ¶ 26; EEOC Charge of Discrimination (Dkt. 27-11).  At

around the same time, in response to Plaintiff's concerns, Sparks converted an old storage room

into a women's locker room.  *See* Def.'s 56.1 Stmt. ¶¶ 66–67; Pl.'s 56.1 Resp. ¶¶ 66–67.  Also at

or around this time, Sparks installed plastic curtains in the hallway in which the rest of Sparks'

lockers are maintained to provide some privacy for the male employees who continued to change

in that area.  *See* Pl.'s Tr. at 78.

After the EEOC issued a Notice of Right to Sue in November 2018, Plaintiff commenced

this lawsuit in January 2019.  Def.'s 56.1 Stmt. ¶¶ 27–28; Pl.'s 56.1 Resp. ¶¶ 27–28.  Plaintiff

alleges gender-based discrimination and hostile work environment in violation of Title VII, the

NYSHRL, and the NYCHRL.  *See* Compl. ¶¶ 1, 53–66, 74–114.  Plaintiff also alleges retaliation

in violation of Title VII and the NYCHRL and sexual harassment in violation of the NYCHRL.

*See* Compl. ¶¶ 1, 67–73, 115–136.

## DISCUSSION

### I.      Standard of Review

#### A.      Legal Standard for Motions for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). To defeat summary judgment, "[t]he non[]moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting *Celotex*, 477 U.S. at 324).

In reviewing motions for summary judgment, courts "construe the facts in the light most favorable to the non[]moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79–80 (2d Cir. 2009)). A district court, however, is "under no obligation to engage in an exhaustive search of the record for evidence in support of plaintiffs' claims if they fail to provide it." *Jones v. Goord*, 435 F. Supp. 2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 56(c)(3); *Lee v. Alfonso*, 112 F. App'x 106, 107 (2d Cir. 2004). A party opposing a motion for summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Similarly, under the rules of this district, a party opposing a motion for summary judgment must "specifically respond to the assertion of each purported undisputed fact . . . and, if controverting any such fact, [must] support its position by citing to admissible evidence in the record." *Baity v. Kralik*, 51 F. Supp. 3d 414, 417–18 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012)); *see also* Fed. R. Civ. P. 56(c)(1)(A)–(B); *Kalola v. Int'l Bus. Machs. Corp.*, No. 13-CIV-7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017).

### B.   Other Considerations

Federal Rule of Civil Procedure 56(c) sets forth the basic requirements that parties must follow in citing facts both to support and oppose motions for summary judgment.  *See* Fed. R. Civ. P. 56(c).  Of note, Rule 56(c) requires that affidavits or declarations relied on to support or oppose the motion be made on personal knowledge and be based on evidence that would be admissible at trial; Rule 56(c) also permits a party to object that its opposition's factual assertions are not supported by admissible evidence.  *See* Fed. R. Civ. P. 56(c)(2), (4); *see also Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986) ("[H]earsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in [an] affidavit.") (quoting 6 Moore's Federal Practice ¶ 56.22[1], at 56–1312 to 56–1316 (2d ed. 1985) (footnote omitted)).

Plaintiff relies heavily on the testimony of Mr. Miguel Flores, a non-party witness and Plaintiff's former coworker, even though Plaintiff's own unambiguous testimony frequently directly contradicts that offered by Mr. Flores.  Mr. Flores readily acknowledged that he largely lacks personal knowledge of most incidents undergirding Plaintiff's claims; his understanding of the facts comes primarily from conversations he had with Plaintiff, and his personal opinions of various incidents frequently have little to no factual basis but are instead based on speculation or conjecture.  *See* Def.'s Reply Mem. of Law at 8–10; *see also, e.g.*, Flores Tr. at 13–15, 20, 22–23, 66.  Because a large portion of Plaintiff's response and declaration in support of her opposition to summary judgment relies on assertions that would not be admissible at trial, in particular the testimony of Mr. Flores as well as portions of Plaintiff's own deposition, the Court has limited its analysis of Plaintiff's response to those portions of the record that would be admissible at trial.  *See Santos v. Murdock*, 243 F.3d 681, 683–84 (2d Cir. 2001) (disregarding plaintiff's opposition to summary judgment as based on inadmissible hearsay); *Kulak v. City of*

*New York*, 88 F.3d 63, 71 (2d Cir.1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."); *Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16-CV-6278, 2018 WL 4625768, at *4 (S.D.N.Y. Sept. 26, 2018) ("Where Plaintiff's declaration proffers facts that would not be admissible in evidence, the Court has not considered them."); *cf. Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (determining that plaintiff's "[feelings and perceptions] of being discriminated against" cannot serve as evidence of discrimination (internal quotation marks omitted)).

## II.  Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's Claims for Gender-Based Discrimination

### A.  Applicable Law

Discrimination claims brought pursuant to Title VII and the NYSHRL are analyzed using "the familiar burden-shifting framework" as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014); *see also Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015).

To establish a prima facie case of discrimination, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was qualified for the position that she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred

under circumstances giving rise to an inference of discriminatory intent.  *Holcomb*, 521 F.3d at 138 (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

      **B.**      **Plaintiff Has Not Established a Prima Facie Case of Discrimination**

Defendant does not dispute that Plaintiff has satisfied the first two elements of her prima facie case, s*ee* Def.'s Mem. of Law at 12 n.5; Defendant contends, however, that Plaintiff has established neither the third nor fourth elements of her prima facie case, *see id.* at 12–15.  For the reasons set forth below, Plaintiff has failed to demonstrate that she suffered an adverse employment action and that any alleged adverse employment action occurred under circumstances giving rise to an inference of gender-based discrimination.  The Court, therefore, need not inquire into whether Defendant has proffered legitimate, non-discriminatory reasons for its actions.

      **1.**      **Plaintiff Has Not Shown an Adverse Employment Action**

An adverse employment action is a "materially adverse change in the terms and conditions of employment."  *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001) (internal quotation marks and citation omitted), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).  For a change in working conditions to be materially adverse, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less important title, a loss of important benefits, or significantly reduced material responsibilities."  *Id.* (citing *Galabya*, 202 F.3d at 640).

Although Plaintiff asserts that Defendant subjected her to "several" adverse employment actions, Pl.'s Mem. of Law at 10, 11, she discusses only one alleged adverse employment action:

"she was overworked with seatings" by Mr. Mohran after he was promoted to manager.  *Id.* at

11.[2]  Based on the evidence that Plaintiff has put forth, no reasonable jury could conclude that

she was subject to any adverse employment action during her tenure at Sparks.

The Second Circuit has held that "the assignment of 'a disproportionately heavy

workload' can constitute an adverse employment action."  *Vega v. Hempstead Union Free Sch.*

---

[2]        In its Rule 56.1 Statement of Undisputed Facts, Defendant asserted that Plaintiff had not been subject to any adverse employment action as a result of the allegations contained in her Complaint. Def.'s 56.1 Stmt. ¶ 12.  In her Rule 56.1 Response, Plaintiff predictably disputed this contention, noting her allegations concerning Mr. Mohran's alleged overseatings and citing her testimony that "she did not have her own locker room, and she initially did not have a locker and had to carry her clothes around and when she requested a locker, she was assigned an area where other males change."  Pl.'s 56.1 Resp. ¶ 12 (citing Pl.'s Tr. at 80).  Because, however, Plaintiff did not argue in her opposition memo that the locker room arrangement constituted an adverse employment action, the Court deems Plaintiff to have abandoned this argument.  *See Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (finding claims abandoned when not addressed in plaintiff's memorandum of law despite plaintiff having addressed those claims in response to defendants' Rule 56.1 statement); *Jackson v. Federal Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."); *Grandy*, 2018 WL 4625768, at *3 (collecting cases).

The Court also notes that Plaintiff's Rule 56.1 Response failed to comply with both this district's local rules and this Court's Individual Practices.  Throughout her response, Plaintiff failed to individually number additional facts she claimed to be in dispute. *See, e.g.*, Pl.'s 56.1 Resp. ¶¶ 12, 40, 41, 51.  Further, Plaintiff relied largely on inadmissible hearsay and speculation as the basis for contesting otherwise undisputed facts.  *See supra* section I.B.  Similarly, a significant portion of Plaintiff's Rule 56.1 Response is entirely nonresponsive to the proposed undisputed fact Plaintiff seeks to call into doubt.  *See, e.g.*, Pl.'s 56.1 Resp. ¶¶ 40, 50, 89, 100, 126,134, 138.  Therefore, those facts are deemed undisputed.  *See Baity*, 51 F. Supp. 3d at 417–21 (disregarding "purported 'denials' in Plaintiff's 56.1 Statement that do not actually deny or refute the specific facts asserted by Defendants, are not supported by citations to admissible evidence in the record, are contradicted by other admissible evidence in the record, or that are improper legal arguments").

Even if Plaintiff had discussed the locker room situation in her response, the result would not have been different.  With respect to the overall locker arrangement, in which all employees' lockers, regardless of the employee's gender, were located in the same hallway, Defendant's maintenance of the same arrangement as existed before Plaintiff began her employment could hardly be construed as an adverse employment action against Plaintiff.  Further, Defendant's acquiescence to Plaintiff's request for a locker (not a locker *room*) can, under no circumstances, be construed as adverse to Plaintiff when the alternative was, in Plaintiff's words, "to carry her clothes around."  *See* Pl.'s 56.1 Resp. ¶ 12; *see also Weeks*, 273 F.3d at 86 (responding positively to Plaintiff's complaint by transferring alleged perpetrator of harassment found not to be an adverse employment action); *Batchelor v. City of New York*, 12 F. Supp. 3d 458, 473 (E.D.N.Y 2014) (finding that the absence of a locker cannot be a material adverse employment action).  This is especially so considering Plaintiff's and others' testimony that not all Sparks employees had an assigned locker.  *See* Pl.'s Tr. at 80; Edelstein Tr. at 22 ("Employees are not assigned to specific lockers.  There were people who had lockers and previously to [Plaintiff] coming to the restaurant and due to a labor dispute, we didn't have free lockers.").  That Plaintiff's assigned locker was located in an area in which her male coworkers also had their lockers, and that those male coworkers allegedly changed in Plaintiff's presence, may be relevant to Plaintiff's hostile work environment and sexual harassment claims, *see infra* section III.B.2, but, as a matter of law, it does not constitute an adverse employment action.

*Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Feingold*, 366 F.3d at 152–53).  Plaintiff, however, must demonstrate by admissible evidence that her workload was *disproportionately* heavy and that this increased workload was not merely a minor inconvenience or alteration of job responsibilities.  *See, e.g.*, *id.* at 88 (deeming Plaintiff to have suffered adverse employment action where Plaintiff alleged he was required to do "twice as much work" and assigned work in excess of his employer's policy); *Feingold*, 366 F.3d at 153 (finding Plaintiff demonstrated adverse employment action by offering evidence that supervisors "regularly reassigned" and "regularly reshuffled" cases to white administrative law judges); *Avillan v. Potter*, No. 04-CIV-9019, 2006 WL 3103309, at *11 (S.D.N.Y. Nov. 1, 2006) (holding that Plaintiff showed adverse employment action by adducing evidence that "quite often" he was assigned work that fell within coworkers' assigned routes).

Providing no specifics, Plaintiff asserts only that Mr. Mohran overworked her by assigning her more tables.  *See* Compl. ¶ 36; Pl.'s Tr. at 186.  Plaintiff relies on Mr. Flores' testimony to provide any semblance of detail.  Looking only to the admissible portion of his testimony, Mr. Flores testified that he witnessed shifts during which Plaintiff "would be busy the whole night, while others were not doing anything."[3]  Flores Tr. at 24.  Mr. Flores also testified, however, that he recalled Mr. Mohran assigning Plaintiff more tables than other servers on only one or two occasions and that Plaintiff was not otherwise subject to overseatings.  *See id.* at 66–67.  Plaintiff herself puts forth no evidence or testimony as to the frequency of this alleged mistreatment.  Plaintiff also does not indicate how this action adversely affected her employment, other than by pointing to Mr. Flores' testimony that there were two evenings during which she was busier than other servers.  She does not allege that her assigned workload

---

[3]    The Court assumes that this testimony is hyperbolic as it is inconceivable that all other waiters would have literally done nothing for an entire shift.

prevented her from performing her job at an adequate level or any other specific impact the added work had on the conditions of her employment.  In short, Plaintiff alleges no facts from which one could infer that Mr. Mohran's work assignments created a materially adverse change in her working conditions.  *See Weeks*, 273 F.3d at 86 (rejecting claim of adverse employment action where plaintiff provided no details on alleged action's effects or ramifications); *Young v. Rogers & Wells LLP.*, No. 00-CIV-8019, 2002 WL 31496205, at *5 (S.D.N.Y. Nov. 6, 2002) (rejecting as insufficient plaintiff's discrimination claim where she alleged that she was twice assigned more work than her white coworkers, especially as plaintiff did not "even attempt to quantify the burden in such a way as to demonstrate that she was assigned an unusually heavy workload").

Further, Plaintiff's claim to have suffered a *disproportionately* heavy workload is undercut by her own testimony.  Plaintiff testified that she was not the only employee who was subject to Mr. Mohran's mistreatment; Mr. Mohran also overworked her male colleagues.  *See* Pl.'s Tr. at 186–87.  In fact, Plaintiff testified that Mr. Mohran "will do it with everyone but he has certain people that he overlooks."  *Id.* at 187.  If all or nearly all of the workforce is subject to the same occasional increase in workload, any given employee subject to such treatment cannot reasonably claim to have faced a disproportionately heavy workload in comparison to his or her coworkers.  *See Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 461 (S.D.N.Y. 2007) (finding no adverse employment action where alleged increased workload was imposed on entire department).

In light of her proffered evidence, Plaintiff's claim boils down to a barebones assertion that there were days when she received a heavier than usual workload, placing her in alignment with her male coworkers, who also were occasionally subjected to overseatings.  As a matter of

law, this does not rise to the level of a disproportionately heavy workload and therefore does not demonstrate a materially adverse change to the terms and conditions of Plaintiff's employment. Therefore, Plaintiff has not established an adverse employment action necessary to satisfy her prima facie case of gender discrimination.

### 2.      Plaintiff Has Not Raised an Inference of Discrimination

Even if Plaintiff had created a question of fact whether she suffered an adverse employment action, summary judgment for Defendant would still be appropriate because Plaintiff has presented no evidence that raises an inference of discrimination, a required element of her prima facie case.  "[T]he ultimate issue in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an impermissible reason, *i.e.*, a discriminatory reason."  *Vega*, 801 F.3d at 87 (internal quotation marks omitted) (quoting *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997)).  "A plaintiff can meet that burden through direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination."  *Id.* (citations omitted).  "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse employment action].'"  *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Plaintiff seeks to establish an inference of discrimination primarily based on remarks by her coworkers, allegations concerning Mr. Mohran's conduct, and assertions about the nature of the workplace, as supported by Mr. Flores' testimony.  Plaintiff, however, has not put forth

sufficient evidence to support an inference of discrimination, especially when considered in connection with the specific adverse employment action she alleges.  Additionally, as with her allegation of an adverse employment action, Plaintiff's own testimony hamstrings her attempt to show a discriminatory intent, as she conceded during her deposition that multiple facially neutral remarks or altercations were motivated by personal disputes rather than by gender.  As a result, Plaintiff has failed to demonstrate a genuine issue of material fact with respect to whether Defendant's alleged adverse employment action occurred under circumstances suggesting an intent to discriminate based on gender.

### a.    Coworkers' Remarks

In assessing whether remarks are probative of an employer's discriminatory intent, district courts in this circuit "have considered four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level coworker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)."  *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149–50 (2d Cir. 2010).  In essence, a plaintiff must demonstrate a nexus between the allegedly discriminatory statements and the adverse employment action.  *See Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004).

Most of the remarks that Plaintiff points to as evidence of discriminatory intent are comments made by her coworkers, not her supervisors.  In total, Plaintiff points to five incidents based on which she argues that Sparks is riddled with gender-based animosity or bias: (1) Ernesto, a chef, offered Plaintiff better food if she would date his brother; (2) Ernesto, in response to Plaintiff's comments about how he cooked, called Plaintiff "a piece of shit" and said "you are nobody"; (3) three coworkers called Plaintiff a "bitch" on a single occasion; (4) a

14

coworker called Plaintiff a "slut" on a single occasion; and (5) a coworker, Ergin, in response to a complaint by Plaintiff about his work ethic, told Plaintiff that she was "a piece of shit" and a "nobody." [4]  *See* Pl.'s Mem. of Law at 12–13; Def.'s 56.1 Stmt. ¶¶ 106, 112, 117–120, 136–137; Pl.'s 56.1 Resp. ¶¶ 106, 112, 117–120, 136–137.

Even assuming *arguendo* that all of these remarks evince gender-based animosity, none has any connection to Mr. Mohran allegedly overworking Plaintiff, nor in their totality are they so significant as to create an inference of discrimination.  Plaintiff herself makes no attempt to develop a nexus between these statements and the alleged adverse employment action about which she complains.  Because Plaintiff's allegations concerning overseatings are entirely devoid of specifics, there can be no analysis of the temporal connection between the coworker comments and Mr. Mohran's alleged overseatings.  That is of little consequence, however, because, as remarks uttered exclusively by coworkers with no purported connection to any employment action, they are minimally, if at all, probative of Defendant's alleged discriminatory intent.  *See Anderson v. Hertz Corp.*, 507 F. Supp. 2d 320, 328 (S.D.N.Y. 2007) (noting that several courts in this district have held that "verbal comments made by individuals not involved in making the adverse employment decision cannot themselves give rise to an inference of . . . discrimination").

Perhaps Plaintiff meant to argue that Sparks' failure to respond to, and therefore its complicity in, Plaintiff's coworkers calling her a "bitch" or a "slut" was sufficient to raise an inference of discrimination.  Plaintiff made no such argument, however.  Instead, Plaintiff

---

[4]     Whether in an attempt to make Plaintiff's allegations appear more voluminous than they actually are, or simply out of carelessness, Plaintiff's counsel repeatedly references the same few allegations, even repeating verbatim the same allegation twice within a couple sentences.  *See, e.g.*, Pl.'s Mem. of Law at 12–13 (repeating the sentence "Flores testified that he did witness Mr. Mohran speaking in his own language and pointing at Plaintiff," twice within three sentences).  Unfortunately for Plaintiff, repetition does not make the evidence more probative.

asserted, repeatedly, that the same few comments by her coworkers sufficed to raise an inference

of discrimination.  Even if Plaintiff had made such an argument, however, it too would be

unavailing, because, as noted *infra* section III.B.3, Plaintiff testified that these incidents were

one-off occurrences that did not recur and, in most cases, were satisfactorily investigated by

Defendant.  *See also Anderson*, 507 F. Supp. 2d at 328 (finding that employer's nonaction in

response to subordinates' discriminatory remarks to plaintiff could not support an inference of

discrimination).

### b.       Mr. Mohran's Conduct

In addition to her coworkers' remarks, Plaintiff points to certain comments and conduct

by Mr. Mohran, her supervisor.  Plaintiff alleges that Mr. Mohran called her a "jamuta," which,

according to an unnamed individual who "speaks [Egyptian]," translates to "prostitute."  Pl.'s

Mem. of Law at 13.  Plaintiff cites Mr. Flores' testimony that he witnessed Mr. Mohran speaking

in a foreign language and pointing at Plaintiff to bolster this claim.  *Id.* at 12–13.  Plaintiff also

points to the alleged adverse employment action itself, the overseatings, as further evidence of a

discriminatory motive.  Finally, Plaintiff asserts that after the shoe-spitting incident, Mr. Mohran

singled Plaintiff out by following her around the restaurant and staring at her.  Plaintiff also

supports these allegations with Mr. Flores' testimony, which supposedly demonstrates that all of

Mr. Mohran's conduct occurred in an environment plagued by discriminatory bias and

preferential treatment.

Because Mr. Mohran is Plaintiff's supervisor and he carried out the alleged adverse

employment action, Plaintiff's allegation that Mr. Mohran called her a prostitute comes closer to

having a nexus to the alleged adverse action than her complaints about her coworkers'

comments.  *See Henry*, 616 F.3d at 149–50.  Plaintiff's allegation, however, is both speculative

and unsubstantiated, and her evidence in support of this allegation incomplete and inadmissible,

such that it does not raise a material question of disputed fact.  *See Santos*, 243 F.3d at 683

(discussing requirement that affidavits and declarations be admissible themselves or based on

admissible evidence in order to support opposition to summary judgment); *Grandy*, 2018 WL

4625768, at *3 (same).  Plaintiff acknowledges that she does not understand or speak Mr.

Mohran's native language.  *See* Def.'s 56.1 Stmt. ¶ 134; Pl.'s 56.1 Resp. ¶ 134.  Moreover,

Plaintiff does not reveal whom allegedly informed her that the word Mr. Mohran used means

"prostitute."[5]  Even if she had, her testimony regarding what someone told her is inadmissible

hearsay to prove the meaning of the word.  *See* Fed. R. Evid. 801, 802.  Further, Mr. Flores'

testimony that he witnessed Mr. Mohran speaking in a foreign language and pointing to Plaintiff

does nothing to bolster Plaintiff's claim that Mr. Mohran directed profanity at her.  Plaintiff

offers no other evidence to prove that Mr. Mohran called her a prostitute.  Even if the Court were

to credit these allegations, however, Plaintiff testified that she heard the alleged profanity only "a

few times," and provided no information regarding the context in which the comments were

made or the proximity in time to Mr. Mohran allegedly overseating her.  *See* Def.'s 56.1 Stmt. ¶¶

134–135; Pl.'s 56.1 Resp. ¶¶ 134–135.  Thus, there is no evidence from which a jury could

conclude that Mr. Mohran's infrequent alleged use of a foreign profanity rendered his alleged

infrequent overwork of Plaintiff likely to have been based on her gender rather than on his

personal animus towards her.  *See Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116 (2d Cir.

2007) ("The relevance of discrimination-related remarks does not depend on their offensiveness,

but rather on their tendency to show that the decision-maker was motivated by assumptions or

attitudes relating to the protected class."), *abrogated in part on other grounds by Gross v. FBL*

---

[5]      While "Egyptian" is not a language, and the word "jamuta," which Plaintiff alleges Mr. Mohran directed at her, does not appear to be a word in Arabic, according to Google Translate, "sharmuta" appears to be an Arabic vulgarity translating to either "bitch," "whore," or "prostitute."

*Fin. Servs., Inc.*, 557 U.S. 167 (2009).  For these reasons, Mr. Mohran's alleged remarks, even

considered in conjunction with Plaintiff's other allegations, are insufficient as a matter of law to

raise an inference of discrimination.  *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir.

1998) (confirming that stray remarks by a supervisor, without more, are insufficient to withstand

summary judgment).

Plaintiff next seems to argue that Mr. Mohran's conduct toward Plaintiff, or the

circumstances in which that conduct occurred, give rise to an inference of discrimination.  As an

initial matter, Plaintiff's attempt to use the alleged adverse employment action itself is

unavailing.  Assigning Plaintiff more tables than other servers, as an act in itself, has no

markings of gender discrimination.  Additionally, while some courts have held that "hostile

stares" are cognizable evidence of a hostile work environment, *see Bowen v. Mo. Dep't of Soc.

Servs.*, 311 F.3d 878, 885 (8th Cir. 2002), Plaintiff has not adduced any additional evidence to

demonstrate that such stares occurred under circumstances suggesting an intent to discriminate

based on gender.  As with the alleged overseatings, a hostile stare is a facially gender-neutral act

that, standing alone, cannot support an inference of gender discrimination.

Ultimately, Plaintiff's own testimony concerning Mr. Mohran's motivations for his

allegedly abusive conduct combined with the absence of other admissible evidence of gender-

based discriminatory intent forecloses the possibility that Plaintiff can raise an inference of

discrimination.  Plaintiff repeatedly testified that she believes that all of Mr. Mohran's

mistreatment of her was a direct result of his mistaken belief that she wrote the October 2016

letter, in which Sparks' employees complained about Mr. Mohran's performance as a server.

*See* Pl.'s Tr. at 99–100, 150.  The October 2016 letter does not mention gender-based

harassment, discrimination, or retaliation against Plaintiff or any other individual.  *See* Def.'s

56.1 Stmt. ¶ 45; Pl.'s 56.1 Resp. ¶ 45.  Plaintiff does not assert that Mr. Mohran discriminated against or harassed her before the October 2016 letter.  Thus, Plaintiff herself appears to have foreclosed the possibility that Mr. Mohran's conduct—whether the alleged overseatings, hostile stares, attempts to "bump" her with food trays, or the shoe-spitting incident—was motivated by anything other than personal animus toward Plaintiff stemming from the mistaken belief that Plaintiff complained about Mr. Mohran's work performance to management.

Seeking to avoid this conclusion, Plaintiff asserts that, even if Mr. Mohran's primary motivation was personal animosity due to the October 2016 letter, that animosity *is* gender-based because Plaintiff was the only female who signed the letter.[6]  *See* Pl.'s Mem. of Law at 13. Recognizing the logical leap that this argument requires, Plaintiff points to Mr. Flores' testimony to demonstrate that Mr. Mohran's conduct is best understood as an expression of gender bias and discrimination.  As noted previously, Mr. Flores has no firsthand, admissible testimony to provide regarding Mr. Mohran's motivation for mistreating Plaintiff.  As a result, Plaintiff's wholesale reliance on Mr. Flores' testimony—that, in his opinion, Sparks was a difficult place for women to work and that Mr. Mohran did not like women—to provide the basis for an inference of discrimination is unavailing.

The Court also notes that much of Mr. Flores' testimony on this point conflicts with Plaintiff's unambiguous testimony regarding Mr. Mohran's alleged overseatings.  Just as Plaintiff's testimony that Mr. Mohran overworked her male coworkers hinders Plaintiff's ability to demonstrate the existence of an adverse employment action, so too does her testimony

---

[6]     Plaintiff's subsequent argument that "it is plausible that Mr. Mohran's discriminatory behavior may have escalated after Plaintiff accused him of spitting in her shoes and . . . complained about this incident to upper management" in no way supports an inference of gender discrimination.  Pl.'s Mem of Law at 13; *see also infra* section III.B.1.  Moreover, at summary judgment the case has moved past the point of plausible allegations – Plaintiff needs some actual proof, which she has not adduced.

undermine her ability to prove that the alleged adverse action was discriminatory.  One way of raising an inference of discrimination is for Plaintiff to show that similarly situated male employees were treated more favorably.  *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997).  That Plaintiff's male colleagues were similarly overworked by Mr. Mohran seemingly precludes Plaintiff's argument that her male colleagues received preferential treatment.[7]  *See* Pl.'s Tr. at 186–87.  In fact, Plaintiff testified that Mr. Mohran treats "everyone" poorly, and that his bases for mistreatment are whether an employee is "not doing what he wants [him or her] to do" and whether he likes the employee personally.  *See* Def.'s Reply Mem. of Law at 4; Def.'s 56.1 Reply ¶ 12.  Further hindering Plaintiff's ability to prove that Mr. Mohran's facially sex-neutral conduct was motivated by a gender-based discriminatory intent is Plaintiff's admission that her only female coworker is not subject to the same type of alleged mistreatment and harassment from Mr. Mohran.  *See* Pl.'s 56.1 Resp. ¶¶ 49–52.[8]

Plaintiff offers no other evidence to raise an inference of gender discrimination.  Accordingly, even if Plaintiff had been able to demonstrate an adverse employment action, she has still failed to establish a prima facie case because she has no evidence that raises an inference of discrimination.  Thus, Defendant's motion for summary judgment must be granted as to Plaintiff's claims for gender discrimination under Title VII and the NSYHRL.

---

[7]    Plaintiff claims that the male employees who were mistreated by Mr. Mohran are Hispanic.  Pl.'s Mem. of Law at 14; Pl.'s 56.1 Resp. ¶ 15.  This assertion is interesting but irrelevant because those employees are still male, which undercuts Plaintiff's claim of *gender* discrimination.

[8]    The Court does not credit Mr. Flores' factually unsupported testimony with respect to Mr. Mohran's alleged dislike of a different former female colleague of Plaintiff's.  *See* Flores' Tr. at 20, 41.  Thus, Plaintiff's objection to Defendant's undisputed fact that Mr. Mohran "does not similarly 'target' [Plaintiff's female coworker]" does not create a material question of fact.  Pl.'s 56.1 Resp. ¶ 51.

### C.      Plaintiff's NYCHRL Claims[9]

The Court heeds the Second Circuit's instruction to "analyze NYCHRL claims separately and independently from any federal and state law claims," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), and to review such claims "more liberally" than their federal and state counterparts in order to "accomplish the law's uniquely broad purposes," *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66–69 (1st Dep't 2009)).  Unlike its federal and state counterparts, "the NYCHRL does not require that an employment action taken against a plaintiff be 'materially adverse' in order for the plaintiff to establish a *prima facie* case of discrimination."  *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015); *see also Mihalik*, 715 F.3d at 114.  Rather, under the NYCHRL, a plaintiff must show that she was treated "less well" at least in part because of her membership in a protected class.  *See Mihalik*, 715 F.3d at 110 (citing *Williams*, 61 A.D.2d at 29).  As with claims brought under Title VII and the NYSHRL, however, to establish a claim under the NYCHRL, a plaintiff must show that discrimination played a role in the employer's decision-making.  *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75–76 (2d Cir. 2015); *Philip v. Gtech Corp.*, No. 14-CIV-9261, 2016 WL 3959729, at *10 (S.D.N.Y. July 20, 2016) (holding that the federal, state, and city "statutory standards as to causation are coterminous").

Even applying the more liberal NYCHRL standard, Plaintiff has failed to raise a genuine issue of material fact with respect to her claims of gender discrimination.  Plaintiff's testimony

---

[9]      Plaintiff's claims asserted under the NYCHRL are not a model of clarity; there is little to no discernible difference among several of Plaintiff's five claims asserted under the NYCHRL.  The parties' briefing does little to help distinguish those claims, as both parties largely address the NYCHRL claims in footnotes.  That said, the analysis with respect to all but Plaintiff's NYCHRL retaliation claim is guided by the same principles.  *See Weber v. City of New York*, 973 F. Supp. 2d 227, 262 (E.D.N.Y. 2013) ("The NYCHRL does not differentiate between discrimination and hostile work environment claims; rather, both are governed by N.Y.C. Admin. Code § 8–107(1)(a).").

supports the conclusion that she was treated the same as her male colleagues with respect to the complained-of conduct.  Plaintiff testified that Mr. Mohran was an equal opportunity abusive supervisor who mistreated everyone from time to time.  Plaintiff has thus offered no evidence that raises a reasonable inference that any of Mr. Mohran's actions were motivated by an intent to discriminate against Plaintiff due to her gender.  There is also no evidence to support Plaintiff's contention that she was treated less well than her male coworkers with respect to her locker and changing arrangements.  *See infra* section III.B.2.  Therefore, summary judgment is granted as to Plaintiff's claims for gender discrimination under the NYCHRL.

## III.  Defendant's Motion for Summary Judgment Is Granted as to Plaintiff's Claims for Hostile Work Environment

### A.    Applicable Law

Hostile work environment claims under Title VII and the NYSHRL are governed by the same standards of liability.  *Summa v. Hofstra*, 708 F.3d 115, 123–24 (2d Cir. 2013).  To establish a hostile work environment, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).  "[A] plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'"  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)).  "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be

sufficiently continuous and concerted in order to be deemed pervasive.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).  In assessing whether a plaintiff has alleged conduct sufficiently severe or pervasive so as to materially alter her work environment, courts must consider the record in its totality, looking to factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Whether a plaintiff can hold her employer liable for a hostile work environment depends on whether the harassment is perpetrated by a supervisor or a non-supervisory coworker.  *See Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015).  "If the harassment is perpetrated by the plaintiff's 'non-supervisory coworkers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.'" *Id.* (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004)).  To the extent the alleged harasser is in a supervisory position over the plaintiff, the employer is strictly liable for the harassment, unless the employer can establish as an affirmative defense that (1) "the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Gorzynski*, 596 F.3d at 103 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

**B.      Plaintiff Has Not Established the Existence of a Hostile Work Environment**

In support of her hostile work environment claims, Plaintiff employs the "kitchen-sink"

approach, pointing to many of the same allegations that allegedly support her other claims,

including the following: (1) three coworkers called her a bitch on a single occasion; (2) Mr.

Mohran referred to her as a prostitute in a foreign language; (3) a coworker once called her a

slut; (4) Ernesto, a chef, offered her better food if she would date his brother; (5) Ernesto called

her "a piece of shit" and said "you are nobody" in response to her criticizing his cooking; (6) in a

dispute sparked by her comments about his failure to perform his duties, Ergin (a coworker) told

Plaintiff that she was "a piece of shit" and a "nobody"; (7) Sparks' locker room arrangement; and

(8) Mr. Mohran's alleged overseatings.  *See* Pl.'s Mem. of Law at 18–21.

Stripping away the inadmissible or unsupported allegations, Plaintiff has not adduced

evidence from which a reasonable juror could conclude that she has been subjected to a work

environment "permeated with discriminatory intimidation, ridicule, and insult" severe or

pervasive enough to alter the conditions of her employment; accordingly, her hostile work

environment claims under Title VII and the NYSHRL cannot survive summary judgment.

*Harris*, 510 U.S. at 21.  Further, even if Plaintiff had been able to demonstrate the existence of a

hostile work environment, she failed to adduce evidence from which a reasonable juror could

impute liability to Sparks.

**1.      Several of Plaintiff's Alleged Incidents Are Not Related to Gender**

"It is axiomatic that mistreatment at work, whether through subjection to a hostile

environment or through such concrete deprivations as being fired or being denied a promotion, is

actionable under Title VII only when it occurs because of an employee's sex, or other protected

characteristic."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  In assessing the totality

of circumstances supporting a hostile work environment claim, a court may consider facially sex-neutral incidents, "so long as a reasonable fact-finder could conclude that they were, in fact, based on sex." *Alfano*, 294 F.3d at 378.  To find a facially sex-neutral incident to have been based on sex, there must be "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory."  *Id.*

As discussed *supra* section II.B.2.b, Plaintiff's "evidence" concerning Mr. Mohran's use of a foreign word that allegedly means prostitute to refer to Plaintiff does not create a material question of fact.  Even if she had admissible evidence to support the allegation, Plaintiff has presented no further evidence from which a reasonable juror could conclude that Mr. Mohran's alleged practice of overworking her with a disproportionate number of assigned tables was in any way connected to her gender.  *See supra* section II.B.2.  Therefore, Plaintiff's allegations concerning Mr. Mohran's conduct and comments cannot comprise the basis of her hostile work environment claims because there is no admissible evidence that they were based on her gender. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (finding that Title VII is not a "general civility code").

Plaintiff has also failed to allege any circumstantial or other basis upon which a jury could conclude that her dispute with Ergin was based on Plaintiff's gender.  Plaintiff claims that, after she told Ergin that it was unfair of him to not help the rest of the waitstaff, especially because he was a new employee, Ergin responded by calling her "a piece of shit" and a "nobody," and told her that she could not tell him what to do; Plaintiff replied in kind.  *See* Def.'s 56.1 Stmt. ¶¶ 117–119; Pl.'s 56.1 Resp. ¶¶ 117–119.  Plaintiff and Ergin both submitted complaints to Sparks' HR representative about this incident; Sparks investigated, and Plaintiff and Ergin have had no further issues with each other.  *See* Def.'s 56.1 Stmt. ¶¶ 121–125; Pl.'s

56.1 Resp. ¶¶ 121–125.  Plaintiff has put forth no evidence to indicate that this incident was in any way related to her gender, nor has she alleged that she experienced any additional incidents with Ergin from which the Court could infer that their dispute was based on gender.  Instead, Plaintiff asserts only that Ergin may not have appreciated being bossed around by Plaintiff.  *See* Def.'s 56.1 Stmt. ¶ 120; Pl.'s 56.1 Resp. ¶ 120.  But Plaintiff's speculation regarding Ergin's motivation is not admissible evidence, thus leaving no evidence from which a jury could conclude that this facially sex-neutral incident was in any way related to Plaintiff's gender.

Finally, Ernesto's use of profanity toward her during a dispute over his method of preparing steaks is also a facially neutral incident that is of marginal relevance in determining whether Plaintiff has proven the existence of a hostile work environment.  Plaintiff alleges that, after she questioned Ernesto about his use of butter in cooking steaks, Ernesto screamed at her that the kitchen was not her place and that she was a "simple waitress," after which he called her "a piece of shit" and said that she was "nobody" to tell him how to do his job.  *See* Def.'s 56.1 Stmt. ¶ 112; Pl.'s 56.1 Resp. ¶ 112.  In light of Ernesto's previous suggestion that Plaintiff date his brother, and because a reasonable juror could possibly find that Ernesto calling Plaintiff "a simple waitress" and insisting that the kitchen was not her place implicated gender bias, this dispute with Ernesto can be considered as part of the totality of circumstances bearing on Plaintiff's hostile work environment claim.  *See Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 118 (2d Cir. 2010) ("A plaintiff may rely on incidents of sex-based abuse to show that other ostensibly sex-neutral conduct was, in fact, sex-based." (citations omitted)).[10]

---

[10]     Plaintiff at points also refers to additional incidents in which she and Ernesto exchanged verbal insults or profanities.  *See* Pl.'s Mem. of Law at 6–7, 20.  Because, however, Plaintiff provides no specifics with respect to these other incidents and has provided no evidence from which a jury could conclude that any of these additional verbal spats were in any way connected to Plaintiff's gender, the Court does not consider them in assessing Plaintiff's hostile work environment claims.  The Court's approach is bolstered by Plaintiff's testimony that she believed all disputes with Ernesto subsequent to the steak-cooking incident were a result of personal animus between the two caused by Plaintiff's criticism of Ernesto's cooking technique.  *See* Pl.'s Tr. at 161; 164–65.

##### 2.      Plaintiff Has Not Shown Severe or Pervasive Conduct

Although the Court must not "set[] the bar too high" in assessing claims for hostile work environment, the standard is not minimal; in order to make out a hostile work environment claim, the alleged harassment must be more than mild, isolated incidents.  *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).  After removing from consideration Plaintiff's allegations that cannot reasonably be said to have been based on Plaintiff's gender, Plaintiff is left with her locker-related allegations plus four incidents over the course of more than five years of employment: (1) her coworkers calling her a bitch on a single occasion; (2) her coworker calling her a slut once; (3) a coworker offering her better food to date his brother; (4) and the same coworker cursing at her during a facially gender-neutral dispute.  As a matter of law, these allegations are insufficient to support Plaintiff's claim that there was a hostile work environment, as no rational juror could consider this conduct to have been continuous enough to be considered pervasive.

As an initial matter, none of Plaintiff's allegations is sufficiently severe to alone render her work environment hostile.  For a single instance of harassment to create a hostile work environment, it must be "extraordinarily severe."  *See Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85).  Here, none of Plaintiff's alleged instances of harassment approaches the level of severity required to create an "'intolerable alteration' of [her] working conditions so as to substantially interfere with or impair her ability to do her job."  *Lee v. Sony BMG Music Entm't, Inc.*, No. 07-CIV-6733, 2010 WL 743948, at *8 (S.D.N.Y. Mar. 3, 2010) (citations omitted).  Plaintiff's most serious allegation is that Ernesto sought some sort of *quid pro quo*, in which better food was offered in exchange for Plaintiff

dating Ernesto's brother.  While certainly inappropriate, this does not meet the definition of

"extraordinarily severe" as interpreted by courts in this circuit.  *Compare Ferris v. Delta Air*

*Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) (concluding that a single instance of forcible sexual

assault could alone support a hostile work environment claim) *with Mathirampuzha v. Potter*,

548 F.3d 70, 78–79 (2d Cir. 2008) (finding insufficient an incident in which plaintiff's

supervisor grabbed his arm, punched him in the shoulder and chest, spat in his face, and poked

him in the eye).

Even assuming *arguendo* that each incident Plaintiff alleges in support of her hostile

work environment claim was related to or motivated by gender-based animus—including Mr.

Mohran's comments—Plaintiff's allegations, spanning more than five years, do not describe

conduct so "severe or pervasive to alter the conditions of [Plaintiff's] employment."  *Alfano*, 294

F.3d at 373 (citation omitted).  Instead, Plaintiff describes conduct much more consistent with

one-off, petty occurrences, all of which were addressed by her employer or ceased immediately

without any intervention.  Plaintiff herself classifies the majority of her allegations as "isolated

incidents" that occurred only once or a handful of times.  *See* Pl.'s Mem. of Law at 7 ("Plaintiff

alleges she was subjected to isolated comments by co[]workers."); *id.* (conceding that she was

only called a "bitch" and a "slut" on one occasion each).  Episodic conduct, even if involving

vulgar and gender-specific language, is not so severe as to create a hostile work environment.

*See Schwapp v. Town of Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997) (holding that, in the context

of race-based hostile work environment claims, "there must be more than a few isolated

incidents of racial enmity," and instead "there must be a steady barrage of opprobrious racial

comments" (citations and internal quotation marks omitted)); *Trinidad v. N.Y.C. Dept. of Corr.*,

423 F. Supp. 2d 151, 167 (S.D.N.Y. 2006) (finding the use of "bitch" and a few sexual remarks

insufficient to support a claim for hostile work environment); *Young*, 2002 WL 31496205, at *9 (rejecting hostile work environment claim supported by occasional use of racial slurs and other offensive language such as "bitch," even in conjunction with occasional increase in workload).

Plaintiff's allegations concerning Sparks' "locker room" warrant further examination. Plaintiff's brief does not explain how the locker arrangement rendered Plaintiff's working environment hostile; instead, she asserts her allegations baldly, leaving the Court to fill in her argument. *See* Pl.'s Mem of Law at 19.  Under a generous reading, Plaintiff asserts three possible bases upon which the locker arrangement could support a hostile work environment claim: (1) because Sparks did not have a separate "female locker room" until 2018, Plaintiff was forced to change in front of her male colleagues for several years; (2) Plaintiff was forced to view her male colleagues changing because, until 2018, there were not separate locker areas for men and women; and (3) Sparks treated its male employees more favorably by not providing Plaintiff with her own private space before 2018 and because the "female locker room" provided after 2018 was inferior to the accommodations provided to her male coworkers.  *See id.*  Of these, only the claims to have witnessed her male coworkers changing has any merit; because, however, the arrangement did not subject Plaintiff to an environment rife with discriminatory intimidation, ridicule, or insult, and because it was not motivated in any part by Plaintiff's gender, Plaintiff's locker-related allegations are also insufficient, even in conjunction with her assertions of one-off spats with coworkers, to support Plaintiff's hostile work environment claims.  *See Batchelor v. City of New York*, 12 F. Supp. 3d 458, 479–81 (E.D.N.Y. 2014) (declining to consider as "part of the same actionable hostile work environment" plaintiff's complaints about her locker room and unrelated allegations of excessive scrutiny and discipline

because there was no evidence that perpetrators of the alleged hostile conduct had any authority over the locker arrangements).

In her Complaint, Plaintiff repeatedly asserted that she was forced to change in the "men's locker room" and in view of her male colleagues. *See* Compl. ¶¶ 16–17, 25. In her opposition to Defendant's motion for summary judgment, Plaintiff reasserted that she was "forced to change in the men's locker room." Pl.'s Mem. of Law at 19. Plaintiff's testimony, however, directly contradicts this assertion, as she acknowledged that she was always able to change in a private area away from her male colleagues. *See* Def.'s 56.1 Stmt. ¶ 62; Pl.'s 56.1 Resp. ¶ 62. Plaintiff's attempt at wordplay, asserting that she was "not permitted to use a separate room" but did so "because it was her only option" is nonsensical. *See* Pl.'s Mem. of Law at 19. Plaintiff has offered no evidence to show that Sparks forbade her from using a private room to change and that she was forced to do so in contravention of company policy.

To the extent Plaintiff argues that the locker room demonstrates disparate treatment, this too is unavailing. While disparate treatment is properly considered among the totality of circumstances in assessing hostile work environment claims, *see Pucino*, 618 F.3d at 118; *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001), the pre-2018 locker arrangement was not targeted at members of either gender; it failed to distinguish between genders and assigned all employees to the same locker area. That Plaintiff resorted to finding private spaces in which to change as a result of this arrangement is similarly insufficient to establish a hostile work environment. *See Raeburn v. Dep't of Hous. Pres. & Dev. of N.Y.C.*, No. 10-CV-4818, 2015 WL 4016743, at *14 (E.D.N.Y. June 24, 2015) (rejecting existence of a hostile work environment where plaintiff claimed not to have a female locker room but otherwise failed to allege that women had no place to change or that lack of a locker room affected her ability to do her job);

*see also Castro v. N.Y.C. Dep't of Sanitation*, No. 96-CIV-7745, 2000 WL 1514630, at *7 (S.D.N.Y. Oct. 12, 2000) (finding absence of women's changing room insufficient to support plaintiff's claims where plaintiff had access to multiple private spaces in which to change).  To the extent Plaintiff argues that the women's post-2018 locker room is inferior to that of the men's, this too is unconvincing.  Sparks continues to maintain the same locker arrangement for its male employees, albeit now with curtains that provide some privacy; Sparks' male employees do not have their own locker room as Plaintiff now does.  *See* Pl.'s Tr. at 78.  That Plaintiff has complaints about the conditions of her current locker room is insufficient to demonstrate that Sparks' female employees are treated less favorably than Sparks' male employees in terms of each group's lockers.  *See Batchelor*, 12 F. Supp. 3d at 479 ("Plaintiff's complaints about the conditions in the locker room and the fact that she did not have a locker for a period of three months and had to change into part of her uniform in her car during that time suggest that the conditions were inconvenient but they do not create a hostile working environment."); *cf. Swann v. Office of Architect of Capitol*, 73 F. Supp. 3d 20, 30–31 (D.D.C. 2014) (finding employer's failure to provide separate female locker room and instead relying on existing private spaces could not support claim of pretext for discrimination or retaliation against female employee).

Although Plaintiff was never required to change in front of her male coworkers, Plaintiff was allegedly exposed to her male coworkers changing in her presence prior to 2018.  Whereas Plaintiff did not develop this allegation well (she did not disclose the frequency with which she witnessed her male colleagues changing or any other specifics), Defendant opted to ignore it entirely, ending its analysis after concluding that Plaintiff herself was never forced to change in front of her male colleagues.  *See* Def.'s Mem. of Law at 17–18.

31

Throughout her Complaint, briefing, and testimony, Plaintiff failed to clearly establish the timing and content of her complaints regarding the locker room.  Whether and when Plaintiff complained to management about not having her own locker room is thus a contested matter.  In her Complaint, Plaintiff asserts that she complained to Steve Cetta, an owner of Sparks, about being forced to change in front of her male coworkers but does not allege when she lodged that complaint.  *See Complaint* at ¶¶ 16–17, 24–27.  She also seems to allege that her formal complaint about Mr. Mohran spitting in her shoe in November 2016 was simultaneously a complaint about Sparks' existing changing arrangement, although she again provides no specifics.[11]  *See id.* at ¶ 24.

Despite complaining generally about the locker arrangement, the Complaint nowhere alleges that part of Plaintiff's complaint was that she was forced to view her male coworkers in various stages of undress.  Instead, Plaintiff raised the issue for the first time in her opposition brief, citing her deposition testimony that "half naked male waiters would get naked in front of her."[12]  Pl.'s Mem. of Law at 5.  Neither her deposition testimony nor her opposition memorandum, however, makes any mention of having complained to management, ownership, or HR about her discomfort from witnessing her male coworkers changing clothes.

Whether and to what extent Plaintiff lodged a formal complaint about the locker room in 2018 is also unclear.  The parties agree that Plaintiff made some sort of request or complaint concerning the locker room in 2018.  *See* Def.'s 56.1 Stmt. ¶ 66; Pl.'s 56.1 Resp. ¶ 66.  It is not

---

[11]     Plaintiff's Statement of Events concerning the November 2016 shoe-spitting incident does not include any complaint about having to view her male coworkers changing in her presence, asserting only that Plaintiff changes in a private room for her privacy.  *See* Nov. 17, 2016 Stmt. of Events (Dkt. 27-13).

[12]     In her opposition brief, Plaintiff relies on her deposition testimony to again allege that she had "complained about not having a separate locker room for females" on the same day that she complained about Mr. Mohran spitting in her shoe.  *See* Pl.'s Mem. of Law at 5.  She also cites her deposition testimony to assert that "she had addressed her issue with the locker room previously in 2015."  *See id.*  There is no evidence in the record of a 2015 complaint concerning the locker room.

clear whether Plaintiff made a standalone request for her own locker room or whether Sparks interpreted Plaintiff's EEOC complaint as a locker-related request, prompting Sparks to act. *See* Pl.'s Tr. at 78, 139–43.  What is clear, however, is that in response, Sparks provided Plaintiff with a locker in a room with a door that locks, in which Plaintiff can change and store her personal belongings.  *See* Def.'s 56.1 Stmt. ¶ 66; Pl.'s 56.1 Resp. ¶ 66.

In short, Plaintiff has adduced no evidence that she complained about having to witness her male coworkers changing, instead suggesting that she complained to Sparks about having to change in odd spaces to avoid doing so in front of her male coworkers.  Thus, Plaintiff has produced no evidence from which a reasonable juror could conclude that she subjectively found the presence of her male coworkers changing to have been severe or pervasive conduct that had a materially detrimental impact on her working environment.  *See Patane*, 508 F.3d at 113 (requiring that plaintiff herself find work environment hostile or abusive).  Similarly, Plaintiff has provided no evidence that this arrangement subjected her to any hostile, intimidating, or endangering behavior; the only thing offensive about the situation is that the location of her locker meant that she allegedly viewed her male coworkers in various stages of undress.  Courts in similar circumstances have found that such situations do not constitute a hostile work environment.  *See Duguie v. City of Burlington*, 161 F. App'x 177, 178 (2d Cir. 2006) (affirming summary judgment despite multiple instances in which plaintiffs witnessed a male employee changing while cleaning the men's locker room); *Marquez v. City of New York*, No. 14-CV-8185, 2016 WL 4767577, at *10 (S.D.N.Y. Sept. 12, 2016) ("Courts in this Circuit have deemed isolated incidents of plaintiffs encountering colleagues in states of partial undress insufficiently severe to create a hostile work environment." (citations omitted)); *cf. Dziedzic v. State Univ. of N.Y. at Oswego*, 648 F. App'x 125, 128 (2d Cir. 2016) (rejecting claims for gender

33

discrimination where plaintiff witnessed her male coworkers changing because her mailbox was located in the men's locker room as claims were unaccompanied by any allegations concerning offensive behavior).

Finally, of relevance to all of Plaintiff's locker-related allegations, at no time during Plaintiff's employment did Sparks require its employees to change only after arriving at work. To the extent that any Sparks employee, male or female, including Plaintiff, felt uncomfortable with the locker room at Sparks, he or she was free to arrive already dressed for his or her shift, thereby avoiding the locker area altogether.  That Sparks does not have enough lockers for all of its employees indicates that there was no expectation that all employees would change in the designated locker area; in fact, Sparks has a dedicated space separate from the locker area in which employees can store personal belongings, including coats, shoes, and bags.  *See* Edelstein Tr. at 23.  Therefore, while perhaps the alternative of changing before arriving at work was more inconvenient, to the extent Plaintiff felt uncomfortable being exposed to her undressed male coworkers, she could have avoided it entirely by arriving to work in work attire.  That Sparks did not do more before 2018 to ensure its female employees were comfortable, especially in light the significant gender imbalance in its staff makeup, is unfortunate;[13] Sparks' failure to make special accommodations for its few female employees does not, however, without more, demonstrate a hostile working environment.  The evidence thus supports a conclusion that Sparks was, at worst, indifferent to how its locker arrangement may have inconvenienced its employees, particularly its female employees.  *See* Edelstein Tr. at 26 (noting that prior to Plaintiff's hiring, there were

---

[13]     Plaintiff points in passing to Mr. Flores' testimony that most Sparks' employees are male as further support for her hostile work environment claim.  *See* Pl.'s Mem. of Law at 19.  While the Court is sympathetic to the way in which such a gender imbalance can render nefarious otherwise seemingly innocuous exchanges or can cause facially neutral policies or conduct to weigh more heavily on members of the less represented gender, here, this fact is insufficient to raise the other allegations to the level necessary to survive summary judgment, especially because Plaintiff's female coworker appears not to have experienced any of the same issues.

unlikely to have been women in Sparks' locker area). The evidence does not, however, support a conclusion that Sparks' locker room was in any way targeted at Plaintiff or any other employee on account of their gender.

Plaintiff's brief relies heavily on a single district court case, *Crawford v. ExlService.com, LLC*, No. 16-CIV-9137, 2019 WL 5887214 (S.D.N.Y. Nov. 12, 2019), to argue that she has established sufficiently severe or pervasive harassment to maintain her claims of a hostile work environment at Sparks. *See* Pl.'s Mem. of Law at 17–19. In denying defendants' motion for summary judgment on plaintiff's hostile work environment claims, the *Crawford* court spent a single paragraph discussing plaintiff's allegations. *Crawford*, 2019 WL 5887214, at *2. The court found that plaintiff's allegations of "a few sex-related comments by managers, the company's skewed diversity ratio, Crawford and another employee's impressions that the company favored Indian men over non-Indian women, and a laundry list of instances in which Crawford claims she was treated worse than her male Indian counterparts," sufficed to survive summary judgment, although it was "a close call." *Id.* (footnote omitted). Because of the limited specifics in the *Crawford* opinion, a comparison of the cases is difficult, although an important distinction is that Crawford had alleged a "laundry list" of instances of disparate treatment, *see id.*, whereas here, Plaintiff has alleged one, or maybe two, instances of disparate treatment, neither of which, collectively or individually, would support a jury finding in her favor. In any event, courts in this circuit have granted summary judgment to defendants in cases involving far more severe or pervasive behavior than alleged in this case and in *Crawford*. *See Farmer v. Shake Shack Enters., LLC*, No. 19-CIV-9425, 2020 WL 4194860, at *15 n.10 (collecting cases). Therefore, Plaintiff's reliance on *Crawford* does little to help her survive summary judgment on her hostile work environment claims.

### 3.      Plaintiff Has Failed to Impute Liability to Defendant

Because Plaintiff failed as a matter of law to establish that she was subjected to a work environment permeated by severe or pervasive gender-based harassment or discrimination, the Court need not consider whether Plaintiff could satisfy her subsequent burden to provide evidence that her employer is liable for that environment.  Because, however, Plaintiff's hostile work environment claims create a closer question than her discrimination or retaliation claims, the Court has also analyzed whether, had she succeeded in establishing a hostile work environment, Plaintiff could impute liability to Sparks.  Looking only to those allegations upon which Plaintiff could reasonably support her claims of a hostile work environment, the Court finds that Plaintiff has failed to demonstrate that Sparks is liable for any of the alleged conduct by Plaintiff's coworkers.[14]

"Once a plaintiff has established the existence of a hostile workplace, she must then demonstrate that the harassing conduct 'which created the hostile situation should be imputed to the employer.'"  *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998) (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992)).  With respect to Plaintiff's allegations concerning her coworkers, the Court evaluates Defendant's liability under a negligence standard, in which Sparks' "vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action."  *Petrosino*, 385 F.3d at 225.

As an initial matter, despite allegations in her Complaint to the contrary, *see* Compl. ¶¶ 46–52, Plaintiff has conceded that Sparks maintains anti-discrimination, anti-harassment, and

---

[14]     Because Plaintiff's alleged discomfort from viewing her male coworkers changing was a product of Sparks' locker arrangement, the Court finds it likely that, had her locker room allegations sufficed to establish a hostile work environment, Sparks would be liable for having created that hostile environment.

anti-retaliation policies and procedures, that Sparks conducts anti-sexual harassment training for its employees, and that Sparks conducts additional training for its managers on these topics.  *See* Def.'s 56.1 Stmt. ¶¶ 13, 15–18, 20; Pl.'s 56.1 Resp. ¶¶ 13, 15–18, 20.  Plaintiff has also conceded that Sparks made available to its employees a 24-hour, toll-free hotline to report any allegation of harassment, discrimination, or retaliation.  *See* Def.'s 56.1 Stmt. ¶ 19; Pl.'s 56.1 Resp. ¶ 19.  Her criticism of its efficacy notwithstanding, Plaintiff also does not dispute that Sparks maintains a complaint procedure for its employees.  *See* Def.'s 56.1 Stmt. ¶ 14; Pl.'s 56.1 Resp. ¶ 14.

Assessing each of the incidents in turn, the Court finds that, based on the evidence provided, Sparks adequately investigated and resolved every complaint Plaintiff made of conduct that could constitute harassment.[15]  Plaintiff acknowledges that, of these incidents, she reported only the incident involving Ernesto offering her better food to date his brother.  *See* Def.'s 56.1 Stmt. ¶¶ 108–109, 136–138; Pl.'s 56.1 Resp. ¶¶ 108–109; 136–138.  For those incidents that Plaintiff never reported to Sparks, she acknowledges that the conduct ceased on its own accord, and she was never called a "bitch" or a "slut" again.  *See* Def.'s 56.1 Stmt. ¶¶ 136–137; Pl.'s 56.1 Resp. ¶¶ 136–137.  With respect to the alleged *quid pro quo* involving Ernesto, Plaintiff testified that she reported the incident to Sparks' owner, Mr. Cetta, who spoke to Ernesto, and that Ernesto never again made sexual comments toward Plaintiff.  *See* Pl.'s Tr. at 154.  Because the Court finds that Defendant took appropriate and effective remedial action with respect to all conduct by Plaintiff's coworkers that Defendant knew of or reasonably should have known of, Plaintiff has failed as a matter of law to impute liability for any of these incidents to Defendant.

---

[15]     Plaintiff also acknowledged that Sparks addressed Mr. Mohran's alleged use of a foreign word meaning prostitute and that "such alleged conduct immediately ceased."  Def.'s 56.1 Stmt. ¶ 135; Pl.'s 56.1 Resp. ¶ 135. Plaintiff thus would be unable to impute liability for this alleged conduct to Sparks, as she admits that Sparks promptly corrected the alleged misconduct.

### C.       Plaintiff's NYCHRL Claims

In contrast to the federal standard of "severe or pervasive harassment," *Mihalik*, 715 F.3d at 113, hostile work environment claims brought pursuant to the NYCHRL require a plaintiff to show only that she was subject to "'unequal treatment' *based upon membership in a protected class*." *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 578 (2d Cir. 2013) (quoting *Williams*, 61 A.D.3d at 38), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).  But "[e]ven if the plaintiff establishes that she was treated 'less well' because of her gender, defendants may assert 'an affirmative defense whereby [they] can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'"  *Mihalik*, 715 F.3d at 111 (quoting *Williams*, 61 A.D.3d at 41).  In assessing both a plaintiff's claims and a defendant's affirmative defense, district courts "must consider the 'totality of the circumstances.'"  *Id.* (quoting *Hernandez v. Kaisman*, 103 A.D.3d 106, 115 (1st Dep't 2012)).  Ultimately, however, as with Title VII, the NYCHRL "is not a general civility code," and where a plaintiff fails to demonstrate that the defendant's conduct was caused "at least in part by discriminatory or retaliatory motive," or the defendant demonstrates that the alleged conduct did not exceed "petty slights or trivial inconveniences," plaintiff's claim must fail.  *Id.* at 113 (citations omitted).

While the more liberal standard governing NYCHRL claims renders this a closer question than Plaintiff's other claims, the Court nonetheless find that, as a matter of law, Plaintiff has failed to demonstrate that she faced unequal treatment *on account of her gender*.  Because of the similarity in Plaintiff's gender discrimination and hostile work environment claims under the NYCHRL, the Court incorporates its analysis of those claims found *supra* in section II.C. Plaintiff has failed to produce evidence to create a question of fact whether she was

discriminated against *because she is a woman*, and, in any event, her proof does not rise above

evidence of "petty slights and trivial inconveniences" that are not actionable. *Williams*, 61

A.D.3d at 41. Therefore, summary judgment is granted as to Plaintiff's claims for hostile work

environment and sexual harassment.[16]

## IV. Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's Claims for Gender-Based Retaliation

### A. Applicable Law

Retaliation claims under both Title VII and the NYCHRL are evaluated under the

*McDonnell Douglas* three-step burden-shifting standard. *See Hicks v. Baines*, 593 F.3d 159, 164

(2d Cir. 2010) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)); *see*

*also DeLuca v. Sirius XM Radio, Inc.*, No. 12-CV-8239, 2017 WL 3671038, at *23 (S.D.N.Y.

Aug. 7, 2017). A plaintiff establishes a prima facie case of retaliation by showing:

"(1) participation in a protected activity; (2) that the defendant knew of the protected activity;

(3) an adverse employment action; and (4) a causal connection between the protected activity

and the adverse employment action." *Hicks*, 593 F.3d at 164 (quoting *Jute*, 420 F.3d at 173).

The elements of a prima facie case of retaliation under Title VII and the NYCHRL are

"identical" except that the NYCHRL employs a broader standard of an "adverse employment

action" than its federal counterpart. *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 70

(S.D.N.Y. 2016); *see also, e.g.*, *Ya-Chen*, 805 F.3d at 76 (quoting *Mihalik*, 715 F.3d at 112);

*Leon v. Columbia Univ. Med. Ctr.*, No. 11-CV-8559, 2013 WL 6669415, at *12 (S.D.N.Y. Dec.

17, 2013); *Fattoruso*, 873 F. Supp. 2d at 580. "[T]o prevail on a retaliation claim under the

---

[16]     Where, as here, Plaintiff's sexual harassment claim does not assert a *quid pro quo* by a supervisor, the Court analyzes the claim as one for hostile work environment. *See Fattoruso.*, 873 F. Supp. 2d at 578 (stating that sexual harassment claims pursuant to the NYCHRL may be established via either a *quid pro quo* theory or a hostile work environment theory).

NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citations omitted).

If a plaintiff can establish a prima facie case, thereby creating a "presumption of retaliation," the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action," at which point "the employee must show that retaliation was a substantial reason for the adverse employment action." *Hicks*, 593 F.3d at 164 (quoting *Jute*, 420 F.3d at 173). Ultimately, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

### B.   Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation

#### 1.   One of Plaintiff's Allegations of Protected Conduct Fails as a Matter of Law

"A plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012); *see also Cruz*, 202 F.3d at 566 ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination.").

There is no question that Plaintiff engaged in protected conduct when she filed her EEOC charge and when she filed the instant lawsuit. Plaintiff's retaliation claim rests, however, on two other alleged instances of protected conduct: (1) her request for a separate area in which to change, away from her male colleagues; and (2) her complaint to management and HR about Mr. Mohran allegedly spitting in her shoe. *See* Pl.'s Mem. of Law at 24–25.

40

As a matter of law, Plaintiff's complaint about the alleged shoe-spitting incident cannot constitute protected conduct.  Facially, neither the incident itself nor Plaintiff's complaint about the incident implicates discrimination in any way.  Plaintiff's convoluted chain of events required to reach the conclusion that this was a complaint "about discrimination and harassment (a form of assault) due to her gender," can be reduced to: Mr. Mohran spat in Plaintiff's shoe because she was the only female to have signed the October 2016 letter complaining about his work performance; after Plaintiff complained about Mr. Mohran spitting in her shoe, Mr. Mohran singled her out and overworked her.  *See* Pl.'s Mem. of Law at 24.  As an initial matter, whether Mr. Mohran mistreated Plaintiff *after* she complained about the shoe-spitting incident is irrelevant to whether her complaint about that incident itself reasonably alerted her employer that she was complaining about gender discrimination.  Further, for the same reasons discussed *supra*, Plaintiff's allegation that Mr. Mohran's treatment of Plaintiff in response to the October 2016 letter was based on her gender is entirely unsubstantiated and speculative, supported only by Mr. Flores' inadmissible testimony.  Importantly, the October 2016 letter was entirely devoid of any complaint concerning gender-motivated conduct, let alone discrimination, harassment, or retaliation.  *See* Pl.'s 56.1 Resp. ¶ 45.  Therefore, the Court finds that, as a matter of law, Plaintiff's complaint about the shoe-spitting incident is not protected conduct under Title VII.

As discussed *supra*, Plaintiff has not clearly established the timing and content of her complaints regarding the locker room.  Plaintiff's assertion that her request for a separate area to change was unquestionably a complaint about gender discrimination is similarly vague: Plaintiff provides no indication when she made the complaint, to whom, and about what specifically she complained.[17]  *See* Pl.'s Mem. of Law at 24.  The lack of specificity renders analysis of whether

---

[17]     In the subsequent paragraph, in a string of allegations that seem to relate to the shoe-spitting incident, Plaintiff reiterates that she complained about not having a separate female locker room on the same day that she

this assertion constitutes protected conduct difficult.  But because any complaint regarding

unequal locker facilities could be construed as a complaint about discrimination, the Court

assumes *arguendo* that Plaintiff's request for her own locker room is protected conduct for

purposes of deciding this motion.

### 2.      Plaintiff Has Not Shown an Adverse Employment Action

Under Title VII, the meaning of an adverse employment action in the context of a

plaintiff's *prima facie* case of retaliation is not coterminous with the meaning of an adverse

employment action in the discrimination context; "anti-retaliation protection is broader."  *See*

*Hicks*, 593 F.3d at 165.  Whether an action is "materially adverse" depends on whether it is

"harmful to the point that [it] could well dissuade a reasonable worker from making or

supporting a charge of discrimination."  *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 57 (2006)).  "'Petty slights or minor annoyances that often take place at work and

that all employees experience' do not constitute actionable retaliation," as the retaliation must

"produce[] an injury or harm" in order to fall within the protection of Title VII's anti-retaliation

provisions.  *Id.* (quoting *White*, 548 U.S. at 67–68).  As noted above, under the NYCHRL, a

plaintiff need only show that her employer "engaged in conduct that was reasonably likely to

deter a person from engaging in [an] action [opposing her employer's discrimination]."  *Mihalik*,

715 F.3d at 112.

As with Plaintiff's gender discrimination claims, Plaintiff's only asserted adverse

employment action with respect to her retaliation claims is that Mr. Mohran allegedly overseated

her.  *See* Pl.'s Mem. of Law at 24–25.  The Court's prior analysis with respect to Mr. Mohran's

alleged practice of overseating Plaintiff applies equally here.  Despite the looser standard of

---

complained about the shoe-spitting incident.  *See* Pl.'s Mem. of Law at 24.  It is possible, then, that Plaintiff's
reference to a complaint about the locker room refers to this alleged complaint, although that is by no means clear.

adverse action in the context of Title VII and NYCHRL retaliation claims, Plaintiff's complaint about being occasionally overseated is insufficient as a matter of law to demonstrate that Sparks took any adverse employment action against her.

### 3.   Plaintiff Has Not Shown a Causal Connection Between the Alleged Protected Conduct and the Alleged Adverse Employment Action

As to the fourth prong of the prima facie case, "proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  While subject to a more liberal causation standard under the NYCHRL, "[a] plaintiff must still establish that there was a causal connection between [her] protected activity and the employer's subsequent action." *Weber v. City of New York*, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013).

In addition to failing to demonstrate an adverse employment action, Plaintiff has failed to demonstrate any causal connection between the adverse employment action she alleges and her alleged protected conduct.  Plaintiff has no evidence that connects her complaint about the locker room, her only possible protected conduct, to Mr. Mohran's alleged practice of overseating her, her only alleged adverse employment action.  Thus, her retaliation claim fails whether analyzed under the standard of causation required by Title VII or the NYCHRL.

Because no reasonable juror could find that Defendant's alleged retaliatory act was in any way connected to Plaintiff's sole act of alleged protected conduct, Defendant's motion for summary judgment is granted as to Plaintiff's retaliation claims under Title VII and the NYCHRL.

43

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment (Dkt. 26) is

GRANTED as to all of Plaintiff's claims.  The Clerk of Court is respectfully requested to close

this case.


**SO ORDERED.**

**Date:   September 30, 2020**          **VALERIE CAPRONI**
**New York, New York**                  **United States District Judge**